Good morning, your honors. May it please the court, my name is William Pum, and I represent Yahoo here, the appellant and both also the cross-appellee on this case. And with the court's permission, I'll watch the clock. I'd like to reserve half my time for both the opposition as well as rebuttal later on. So, this case involves an insurance policy. Yahoo purchased an insurance policy that required National Union to provide a duty to defend, which I'm sure the court is familiar, requires the insurance company to step in when a lawsuit is filed, hire attorneys... with the understanding that Yahoo would then reimburse for those costs. Isn't that different than a duty to defend contract? Actually, your honor, and this is where we need to start with the policy, and I'm glad you brought that up, because I think that's where the district court went awry. The district court went awry because it made that assumption going in when they expressed language of the policy in endorsement under personal injury specifically says that National Union has a duty to defend personal injury claims. It also says that National Union has a duty to pay damages that allege personal injury. That is an entirely separate duty that's part of the insurance policy. So, what about Yahoo's responsibility, hold on, what about Yahoo's responsibility to reimburse for the fees? Because that seems, you don't disagree that that's in there, right? Absolutely, your honor, it is definitely in there. But that seems to distinguish this case from kind of the more common case where there really is truly a duty to defend, in which case I don't think there'd be a question that Yahoo could get the full cost of defending the litigation. But the fact that Yahoo has a responsibility and a contractual duty to reimburse, that is the wrinkle in this case. Your honor, you're absolutely correct about that, but again, the important part is you still have to look at the insurance policy language, what does the language say, and how do you interpret the insurance language? If I can interrupt you for a moment, so we've done that, we've all read the contract and the record in your briefing, and I thank both counsel for your excellent briefing. So, it seems to me that National Union was not disputing breach. They don't dispute that they had a duty to defend a covered claim. And we all know that there will sometimes be disputes between an insurer and an insured as to whether a claim is covered. And then, you know, if the insurer thinks it's not covered and they deny coverage, they can be in breach if they're wrong, right? So, here, I respectfully disagree with Judge Nelson a little bit, but I don't think the wrinkle or the issue is that National Union had a duty to defend. It's more, what was the expectation of these parties going to get a contract, what does this contract provide, and what risk was transferred? Because, to me, this is different from, you know, a general liability policy where all the risk is transferred to the insurer. And the insurer pays a hefty premium for that. They pay a lot of money for the insurer to take the risk. But that didn't happen here. As we know from the information that was in the briefing, Yahoo paid a significantly reduced amount of premium because they retained the risk of the ultimate cost of defending litigation of any judgment or settlement. That's correct, right? That stayed with, assuming no breach, that stays with Yahoo, right? Actually, Your Honor, I would disagree with you on that in this respect, and that is the policy did not get rid of National Union's duty to defend. I agree. I'm not saying that they did. They had a duty to defend, and they could be in breach. And I don't see that they dispute that they were found to be in breach, and they're not appealing that. But, assuming there's no breach, I guess backing up a moment, and what does California law provide in contract interpretation? And I saw in your brief that you acknowledged insurance contracts are contracts, so we looked at contract law. And it seems to me it's pretty much black letter law in California that a breach of contract claim, as distinguished from, you know, a bad faith, breach of the covenant, fair dealing, tort claim, contract claim, if you put the parties in the position, it would have been an absent breach, right? Do you agree with that? I do, Your Honor, and here's the rub, though, is it is virtually impossible to put the parties back in the position that they would have been because it is not Yahoo who would have defended. It would have been National Union who would have defended. That's interesting. That's a very interesting argument, Your Honor, and I appreciate the creativity of what you're suggesting. But, as I read these contracts, if there's no breach, and that's the position we need to put the parties in, National Union would have paid the cost of defense, subject to being reimbursed, within either 15 or 30 days, depending on which document you look at. So, this is pretty short term. It's not a year. It's not the conclusion of a litigation. It seems to be pretty quick. And that there's no, if there's no breach, I don't see any possible way for Yahoo to recover the $7 million or so that's speaking here, the cost of the defense and the settlement. There's no breach. They don't get that, right? So, it seems that you're trying to suggest that a breach means you get more than what the contract provided. Here's what's important on this and why the cases allow for recovery of attorney's fees when there's a breach. Obviously, it's impossible to put the parties back because National Union and the insurer doesn't step up to the bat and provide a defense. Wait, wait, wait. There's another thing that happens to insurance pretty regularly, which is when an insurer provides a defense under a reservation of rights. And that creates a conflict between the insurer and the insured. In which case, the insured has the right to seek independent counsel. And that actually happened in this case on the claims that National Union did accept. They did it so under a reservation of rights. It's a pretty common occurrence. So, a party going into an insurance contract knows there could be a reservation of rights. They could be finding independent counsel. Yahoo, in fact, did that here. And if the timeline that National Union has presented is correct, Yahoo interviewed and selected counsel with its choosing before even tendering the first claim to National Union. Yahoo went out and got the counsel it wanted. And they were very happy with their counsel. They weren't expecting National Union to hold their hand and lead them through the process. They wanted their own counsel and they got them. So, I don't know how that suddenly means that when there's a breach, Yahoo can recover $7 million that it couldn't have recovered after the breach. So, here's an important fact that's missing from all of this. It's the fact that they did not issue that reservation of rights when Yahoo was entering into this. That happened after the fact and the court viewed that as a breach of contract under the policy. I understand the timing. I know that was much later. But what National Union has represented, and if it's wrong, please let me know, is that the very first two lawsuits, the one where Yahoo prevailed in having those two dismissed, I forget the names of the two lawsuits, but there were two initial lawsuits that were in 2012, that Yahoo, in fact, interviewed four law firms, retained counsel of their choosing, and then tendered the defense to National Union. So, they had already, if National Union is giving it to us straight, Yahoo had already gone out and selected their own counsel before even asking for coverage. They weren't relying on National Union to find their counsel for them. I'm not sure that that matters one way or another from a legal standpoint because of the fact that they denied coverage. And when you deny coverage, that doesn't change the impact. But I think the important part, and let's focus on the coverage endorsement that really is at issue. And again, I'm glad the court recognizes that policy interpretation means the words of the endorsement. And what's very important about the endorsement is on top of the fact that there was an obligation for Yahoo to reimburse after National Union paid. And we'll put that aside for right now because the court understands the circumstances. But there are other conditions in that document, in the coverage endorsement. One of them is the fact that National Union has to send an invoice out for reimbursement. That's one. But the other more important, and why this is relevant, is the fact that the endorsement has its own default and remedy provision that's in there. In other words, the remedy for National Union, that had National Union gone through the process, defended the case, paid the defense and the settlement like it was required to, it could rely on the endorsement to seek reimbursement. But if they sought reimbursement and Yahoo defaulted, didn't reimburse them back, the remedy is specifically mentioned in the endorsement that says, if you fail to perform, i.e., the reimbursement obligation, we, National Union, may cancel this endorsement or the policy at issue. Now, the reason why that's important is because this endorsement is a free-standing, separate obligation between National Union and Yahoo. But I totally agree with the court so far about the idea that there is a reimbursement obligation. Wait a minute. I'll have to back up for a minute. I'm not sure how the endorsement, which is part of the policy, and says in all caps and bold letters at the top, this is part of your insurance policy, read this carefully, is somehow some separate document. The initial policy and the writer, the endorsement, they're read together, right? Don't we read those together? Correct, Your Honor. And what I'm suggesting here, and I think what Yahoo's position has been, is the fact that the endorsement, the coverage deductible endorsement, is only available when there's a performing carrier. I don't disagree with you. I think you're completely right that the only way National Union could recover reimbursement is if they pay, right? So, they have a provision that allows them to have reimbursement for defense costs and federal costs of federal judgment. But they've got to pay it first so they don't get the reimbursement. But that's not what this case is about. National Union didn't sue Yahoo and say, hey, you owe us money. This is Yahoo suing National Union saying, you breached the contract, you did so in bad faith, and we're entitled to all sorts of damages for that, which in part is actually correct. But we're looking at those provisions to see what would happen absent breach because that's what the case law tells us to do. So, let's put the parties in a position they would be in absent of breach. Absent of breach, National Union would have paid. Absent of breach on Yahoo's part, Yahoo would have reimbursed. So, what are Yahoo's damages then? So, what I'm suggesting here, Your Honor, is the fact that if that's the case, then the obligation, the express obligation of the duty to defend and the duty to pay is a necessary surplus language in the policy. No, it's not. Let me go back to basic security. Yahoo bought a policy that protected it for $1 million of loss, subject to reimbursement at periodic intervals following invoice, so that if the contract was carried out, Yahoo had a 15-day advance. They also had the opportunity to call upon the defense capabilities of an experienced insurance company. And they also had an obligation from the insurance company to pay all kinds of litigation costs, the agreement is very specific on that, subject again to a 15-day reimbursement. So, I look at the end of this and I say, what is this argument of bad faith? A company which has a good faith ability to say, no, I'm not covered, is not obligated to cover. And so, National Union did not front the money. But Yahoo carried on the defense, it was not prejudiced in the slightest, and it can't get more, as Judge Beatty said, than it would have gotten under the contract, which is a 15-day use of money. Where else is it damaged? So, Your Honor, again, I respectfully disagree that Yahoo going out, defending itself is the same as if National Union had to defend the case, because obviously that's what Yahoo contracted for. It's the fact that Yahoo is a big enough company to defend itself. No, absolutely, Your Honor. And the prejudice because you carried on your own defense rather than calling for a National Union. The only comment I would make here is, the one thing is the court doesn't have to guess about how this should be applied, because the only case that's out there in California that's directly on point is the Kennedy decision. Okay, I wanted to ask you about that, because Kennedy, I mean, let's set aside the fact that it's 70 years old, it's two pages, it has very little analysis. Explain to me how that was a fronting policy, because it's not entirely clear to me. There does seem to be some language to support kind of the fronting policy, but it does seem to be a reimbursement policy where the insurer agreed to pay the defense cost. So help me understand how that works. I want you to answer Judge Nelson's question, but I want you to know something when you do that, and that is that I ran a Westlaw check on the Kennedy case to see every time it has been cited in the last 70 years. It's only 12 times. One of them is this case. Five of them are for the proposition that an insurance company can't deny coverage and say you violated your requirement to give us notice of the claim. But what was interesting as I read through those cases and looked at the companion case, Giordano, I think it's called, is that Kennedy involved a TUC contract, right, public utility commission contract, similar to the Federal Motor Safety Transportation Act where common carriers, trucking companies, which is what these people were, are required to have certain coverage to protect the public. And that was the type of contract that was at issue. So it took a little digging to go find what this was, but it wasn't a fronting contract. It was an endorsement for a company. Well, Ms. Broom, Judge Beatty, I appreciate it. Ms. Broom, I asked a question, and I'd appreciate if you could explain to us about Kennedy. Sure, Your Honor. And first of all, on the idea that this is a fronting policy that everyone's assuming that it is, first of all, there's no language in the policy describing that it's a fronting policy, so I'll just respectfully disagree on that. The reason why Kennedy is directly in point is on the issue about the endorsement. Just like in our case, in Kennedy, there was an endorsement that if the insurer in that case had defended the case, didn't breach, that the insurer could have sought reimbursement under the policy, just like National Union is saying here. And what happened there was the fact that they breached their duty to defend and failed to defend, the court said, look, the damages that we're going to award here is the full cost that the policyholder, not the insurer, had to go out and defend. So let's see how we can put it into context here. Had the insurer defended there, they would have been able to get full reimbursement for the cost associated with the defense. And the reason why that's important and why I think the courts hold the way they do is the fact that the contract language says you have a duty to defend is very important. Because if you have an endorsement that says you're entitled to reimbursement, the insurer can simply say, you know what, I'm not going to defend you. Here's the problem. You keep relying on the duty to defend, but I think we need a hook. You didn't pay the premium that would normally be associated with what we understand to be a duty to defend contract. So there is the perception, right or wrong, that Yahoo, if we rule in your favor, would get a huge windfall simply because the insurance company made, it's not even clear it was bad faith, they just made a determination, turned out to be wrong up front that they didn't have the duty to defend. So what is the hook for us to turn that into a $7 million windfall? So let's be clear about this. The premium was the premium. Even if it was less, it was the premium that was required. Why doesn't that go into the expectation of the parties? Because of the fact that the expectation of the parties. If you're paying $100 for a premium that normally goes for $2,000 on the open market, why do you believe that you should get the benefit of the $2,000 premium provisions? Do you think they made a mistake? No. What happened was the fact that they intentionally decided not to defend Yahoo and the jury ultimately determined that it was done in bad faith, which is the determination that is not being challenged here, Your Honor. But the important part is Yahoo had an expectation that it didn't have to deal with these lawsuits, that National Union would step in and defend, and it has honored its obligation that it would go and reimburse them. In other words, this was a nuisance that Yahoo didn't have to deal with. Again, we've got a big claim here, but there are other lawsuits under this policy where Yahoo gets sued, sends a notice letter, National Union steps in, defends it, and then sends us an invoice and we reimburse them back. And I realize that the dollar amount issue has a potential challenge here, but the fact is that's what the policy language is and that was the expectation. And the endorsement, again, going back to it, there are provisions in the endorsement that talk about if we don't reimburse, what the remedy would be. We could have not reimbursed them and the endorsement would have disappeared, the policy would have been canceled. Those are expectations, and I don't want to be too technical about it, but the California Supreme Court requires a literal interpretation of the words of the policy. And the National Union didn't say, we're going to eliminate the duty to defend here. It expressly kept the duty to defend language in there. It kept the duty to pay language in there, and it added the endorsement. So it's very important that you do a literal reading of the policy. And this is not about a gotcha. This is a fundamental obligation of the carrier. And again, I would submit that the Kennedy decision is directly on point on it because even in that situation where if the carrier had performed, their obligation would have been zero. Judge Nelson, I apologize, I didn't mean to hijack your question, but the reason I was pointing that out to you, Mr. Unum, is because I wanted to know when you answered Judge Nelson's question, if when you made that analysis, if you considered in the context of the California Public Utility Commission mandate under state law that a common carrier have an endorsement that would provide coverage for a claim, protect the public, but not necessarily a duty to defend. Did you look at that context and what that contract really was? Yeah, I saw the same cases that you did as well, too, and agree with your assessment on it. But keep in mind the fact that the endorsement did require duty to defend, and they allowed the insurer to seek reimbursement for those things that they otherwise would not have to defend. Sure. So what was interesting, Mr. Unum, about that case was that there had been a dispute whether when the endorsement says we'll cover the damages for any vehicle, trailer, truck, whatever, that the insurer's using, does that mean the duty to defend or just cover the liability? Because the policy at issue listed specific vehicles that were covered, and the vehicle here was not. This is not all in the Kennedy decision. This is in the companion case, which the Kennedy decision rides to the background. And that debate has gone on over the last 70 years. The federal rule is that if the endorsement doesn't obviate the underlying policy, so if there's no duty to defend in the underlying policy, then there's no duty to defend. You may have to pay damages. And the federal cases talking about Kennedy go on to say that California seems to be moving away from that and moving to the federal view. So it's not even clear to me that Kennedy is even good law in the context of a public utility commission endorsement. I would respectfully disagree. Maybe in the PUC context, the language of the endorsement and how the court interpreted it, I think, is relevant and, again, has not been challenged and hasn't been overruled for 70 years, even though there have been opportunities. Hey, Mr. Oum, let me ask this question. Let's assume that we don't think Kennedy is directly on point or that we assume, as Judge Beatty indicated, that perhaps California seems to be moving in a different direction. Neither party addressed this. Should we certify this question to the California Supreme Court? I would love for the court to certify, and then I'm sure opposing counsel would probably want that as well, too, to get clarity associated with it. But in the absence of doing so, our view would be the fact that the California Supreme Court would adopt the Kennedy decision because there's no conflicting authority on that point. There is no other- But what you're suggesting is that they follow Kennedy on the measure of damages for a breach of an insurance contract, and there's a legion of California Supreme Court decisions talking about what the measure of damages is, and that's to put the parties in a position they'd be without a breach. There's also statutory authority. California's adopted laws that say this is what your damages are. So, in my view, you're asking us to apply Kennedy to something that's directly contrary to what the California Supreme Court has done. Actually, the California Supreme Court, in cases where there is a defense and a payment here, I would disagree, Your Honor, that they're clear that money spent on defense and settlement is the proper measure. Well, sure, but everything that you cited, all of those cases were general liability cases. They were comprehensive general liability coverage cases where the risk was transferred to the insurer, and the insurer could pay for the insurer to pay for those costs, which is not what happens here. So I don't see any of those cases as being on point. But go back to certification. If you wanted certification, why didn't you ask for it? I mean, nobody filed a motion seeking certification, and this is the first we've heard your position that Yahoo would welcome that. Well, I think that was in response to Judge Nelson's question regarding whether we would welcome that opportunity. Sure, we would definitely welcome it. I think the reason why they moved briefly is because we believe Kennedy is good law, and that's something that the California Supreme Court would adopt. And just to address your question, Your Honor, is the fact that Kennedy is the only case that deals with the impact of measure of damages when there is such an endorsement, which I think is the critical aspect of why there are no other decisions other than Kennedy to go in that direction. So I think that is an important distinction to keep in mind. If there are no bad faiths, you would be entitled only to get your lawyer's fees, right? I'm sorry, Your Honor. The jury found that Yahoo was entitled to the defense and that National Union breached by not giving its defense. No, Your Honor, the court determined that National Union breached and that they had a duty to defend on the policy. That was not a jury question. Right. Okay. And then your damage was that you confronted the money, right? The damage was the fact that we, Yahoo, not National Union, defended the case. So I would disagree on the approaching idea because it's two different things. You incurred $600,000-some-odd in the expense book. No, Your Honor, we incurred $3 million to defend the underlying case and paid $2 million in settlement subject to the policy limit. Wait. Hold on. I want to get back to that. I had understood there was $7 million at issue. You paid $3 million to defend the underlying and then $2 million to settle it. We paid $4 million to settle but $2 million is the policy limit. Oh, I see. Yes. So if we were to rule in your favor, you would only be entitled to $5 million, not $7 million because of the policy limitation. Correct, Your Honor. And those are stipulated amounts. It's still a windfall. That's, I think, what's given us some heartburn in this case. And, Your Honor, I agree with that. I agree with the prospection but it doesn't change the actual language of the policy because if it was good… Let me ask you this. We've taken you way over. We'll give the other side plenty of time because we haven't even covered a couple of the issues. We may have to bring you back on rebuttal for that. But does California adopt the first breach rule of a contract, meaning if a party breaches the contract in the first instance, it cannot then take advantage of the contract after the fact? Does California adopt that rule? I don't know that it's called that way. But our position would be that it does from the standpoint of what the reciprocal obligation, if any, exists. And I would argue here that it's not a reciprocal obligation. It's a conditional obligation. Is that the argument that you made? That's my concern is can we look to the first breach rule because you didn't cite to the first breach rule. And so is that argument weighed or do you believe that that's encompassed within the argument? I certainly think it's encompassed because that's the conditional breach, the conditional obligation that we're talking about. And, therefore, the endorsement was never triggered because of the breach. So even if it's not phrased that way, certainly the breach articulates that and conceptually applies that principle. Okay. I don't want to cut off questioning. And we'll bring you back. I know you asked for ten minutes for rebuttal. I don't know we'll give you that much, but we will give you time. We've taken you over. And I think at this point it might help to hear from opposing counsel. Thank you, Your Honor. Good morning, Your Honor. Emily Quattro on behalf of National Union. As the court's questioning to Mr. M has indicated, this case is about how to measure contract damages from breach of a fronting policy, which is a very unusual and age-appropriate type of insurance product that Yahoo specifically negotiated to save over $200,000 on its insurance premium. And I think excerpt of record, page 1867, shows just how deliberate Yahoo's choice was to enter into this type of policy that was effectively self-insurance at its primary layer. And this isn't just an add-on, as Yahoo has suggested. This was the defining feature of the policy. Yahoo's professional insurance broker went out to the market and shopped on Yahoo's behalf. National Union was the only company. How common are these fronting policies? Very uncommon. And it's because, you know, most of the time, you know, if an insurer wants to self-insure, it can do so and then just purchase insurance on top of it. Here, for Yahoo's business reasons, it wanted a primary policy that basically functioned like a surety agreement to build an insurance tower on top of. Whatever the business reasons were for Yahoo to want to structure its risk management portfolio that way, that was the choice it deliberately made. So let me ask you a question. The concern I have with your argument is, if we adopt your reading of this policy, there is absolutely zero incentive for your company to ever comply. In fact, it almost invites a breach. Because if you, now, we don't have this in this situation. Yahoo seems to be solvent. But if you had adopted this policy, presumably you take the risk of solvency into account. And if that company was insolvent, or you thought that it was a greater risk that they were insolvent than when you issued the policy, why wouldn't the rational decision be don't front the cost? Because your only risk at that point would be that they wouldn't pay you back. And so if you didn't pay that, all you'd be liable for, if we were in your favor, is some marginal benefit of not fronting the cost. And why wouldn't that be your out every single time? I have a couple of responses, John. The first is that, because as between national union and third parties that might have a claim against the policy, the policy would be in effect even if Yahoo was insolvent and national union couldn't recoup. And the additional thing to keep in mind is that it's a deliberate decision not to defend when there isn't. I want to drill down on that first point. So your position is you would have had duty to pay to the third party the amount. So you would have stepped in to defend it so that you could make sure that the case was adequately defended so that you didn't have to bear the burden on the back end. Exactly. And if there were a judgment, national union would be responsible in a lawsuit brought by the third party with an assignment could recover the policy limits against national union. And so really we're talking about damages only as between Yahoo and national union. And the additional point I would make is that under the law of bad faith, a deliberate decision by national union not to defend does subject national union to bad faith liability. And that's exactly the claim that Yahoo made here, which gives it a right to extra contractual damages that it can prove approximately caused by that deliberate decision not to defend when there should be coverage. And the other thing I would say is that, just as a general matter, insurance companies like national unions have an incentive to make a proper correct coverage determination so that the policy is interpreted consistently across policies and across insurers. Especially when you're talking about coverage provisions where there might be a general liability policy, the vast majority of them that involve a dollar defense, the first dollar defense duty without a right to reimbursement. That's important for underwriting. So there's no incentive for national union to deny coverage in bad faith under this policy. Although that's apparently what happened, at least according to the jury. Well, the jury found bad faith, but the primary argument that Yahoo advanced in the jury portion of the trial for bad faith actually had very little to do with the coverage decision for the Holland case. It had to do with a mistake made in underwriting about an endorsement to the policy, a different endorsement. It was undisputed that there was an error in underwriting, that policy was issued when it was bound, it wasn't complete, and that caused confusion in the claims process. That was the central point of Yahoo's bad faith claim, and we didn't appeal the lack of causation between that mistake and any additional damages because the jury rightfully rejected Yahoo's claim to all of these additional damages it's seeking now as a windfall measure of damages on the contract claim. So what about Yahoo's argument that there were a number of other things that had to happen? This was not so simple that the insurance company would front the money and then they got the reimbursement back. They had to request reimbursement. There might have been other things that had to be done. Why should we assume that those other things would have been complied with? Meaning the insurance company could have not requested certain things, and we never know what would have happened, and in that circumstance, Yahoo might have gotten $5 million of benefit out of this contract, but we don't know how that played out because the contract was breached. I don't think there's any counterfactual universe where anything National Union did would have caused the transfer of that $5 million. Well, there absolutely is. Maybe the insurance company doesn't send the bills out or request the repayment. Well, that would be National Union basically waiving its rights under the contract, and here this case is about Yahoo doing National Union to measure its damages, and the other thing I should make sure... My only point is there is a scenario under which Yahoo could have received $5 million out of this. Not based on the way that the contract is written. I don't agree with that. I mean, we all acknowledge that there were certain things that the insurance company had to do in order to receive reimbursement. Well, I think at trial, the testimony was that the reimbursement process was automatic, so the second National Union paid an invoice, it automatically generated an invoice to Yahoo to pay it back. There was really... I mean, yes, there was a process for the reimbursement obligation, but it didn't require any deliberate decision by National Union about whether it was entitled for that reimbursement or not, and I think another thing to keep in mind is that National Union agreed to defend under a reservation of rights before this case was ever even filed, so National Union was... How much money had been expended, if you know, before they exercised their reservation of rights? I believe almost all of it. I can't remember offhand now whether the... So then what does the reservation of rights really mean? I mean, so at the time, National Union disclaimed coverage. Yahoo wrote about over two years later to request reconsideration. National Union granted it, said, well, defend, please send us the invoices, and I think there was also an issue about when precisely the settlement was paid, but the reservation of rights is something the insurer is required to issue if it doesn't want to waive its coverage defenses, and that did entitle Yahoo, as Judge Beatty recognized, to independent counsel, and it is true that Yahoo retained Morse & Forster and a Washington, D.C. privacy specialist to defend it against this Beza Company litigation before it tendered any of the claims to National Union, and so this was always the case where Yahoo was going to have independent counsel, it was going to have the counsel of its choosing in order to defend it against this very important claim, which is one of the benefits of having a primary policy that's effectively self-insurance, and National Union is getting, you know, National Union issued the reservation of rights, if it had paid, it then would have demanded reimbursement from Yahoo, which is why National Union... Well, I guess I would be more sympathetic to your argument if you'd issued the reservation of rights up front, but you didn't, so I'm not sure why you're making a point now that you're entitled to come back in and Yahoo somehow acted inappropriately in not sending you invoices for a claim that you had already affirmatively said you didn't have any duty to defend. Right, well, so if National Union had issued a coverage position letter, you know, accepting coverage with the reservation of rights two years earlier, the situation between the parties would be the same, and ultimately the question is, what is the damage to Yahoo from that delay? And the only damage to Yahoo under the contract is the time value of money it lost by having to pay its attorneys directly rather than having to pay the exact same amount to National Union 30 days or less later. The district court's measure of contract damages states within the California law that if a party is entitled to the benefit of its bargain, not more. Again, so the benefit of the bargain, I'm inclined to agree with you, but what about the first breach rule? And that's what keeps getting me hung up here, is you breached the contract to not even take the first position that you would now agree you needed to do, which was front the cost. So if you breached that contract, why are you then able, because California law does adopt the first breach rule, why are you then able to rely upon the rest of the contract? That seems to be counter to the first breach rule under California law. Because Yahoo is before this court asking it to award damages per the terms of the policy. So if National Union were the plaintiff here, it would be a different story, but Yahoo is asserting a right to make National Union pay, to make National Union pay for that breach. And once it has done so, then Yahoo can't ignore the reciprocal obligations it would have had. No, I don't think that's right at all. The first breach rule is once a party breaches the contract, the rest of the obligations fall away. And so if the insurance company breached the contract in the first instance, the contract is then null and void. And you have a duty to rectify that breach. You're now trying to say, we don't want to fully rectify that, or in fully rectifying that breach, we want to rely on a provision of the contract that under the first breach rule would already be null and void. I disagree that that's the way that the policy works and the way that California law has determined damages. Because here, the way that damages are determined, it is the net value to the non-breaching party of the value of the contract being performed by both sides. So that's how you measure damages. And it's not about whether or not National Union then can enforce other portions of the agreement after it has breached. This is about how you... So your position would be the first breach rule may apply as to obligations under the contract, but you can't use the first breach rule really in any way to determine the damages portion of the breach. Right, right. When Yahoo is the plaintiff here seeking to have its damages calculated based on enforcement, because what Yahoo is really seeking to do is ask the court to enforce only half of the policy and not measure damages by the value of the full performance on both sides so that it's not just made whole, it gets to leverage the breach in order to obtain a massive windfall it never would have gotten after the breach. California law does not support that type of result. I'm sorry, go ahead. This breach was not a repudiation of the insurance contract, was it? Exactly. It wasn't a repudiation of the insurance contract. The contract remains void or valid for any other claims that Yahoo might tender. I've not studied the first breach rule, but would the first breach rule apply to a situation of a breach that was not a repudiation? I also have not studied it in depth because Yahoo didn't assert that as a basis for its claims in this case. But yeah, I would think we're not repudiating the contract. It's just a question of damages for breach under one circumstance within a policy that would still be in effect otherwise. How is repudiation defined in California law? How is it different from breach? Well, I don't have that offhand, but I would anticipate just based on black letter contract law that it would be National Union saying that basically where the remedy here would be rescission rather than just damages. And we're all at a bit of a disadvantage because this wasn't brief, but what I understood from some of the cases I was reading is that if the insurer breaches the contract because they failed to provide the extent that they're supposed to provide, they can't then say, oh, and by the way, you didn't give us notice. You know, things like other contract provisions. But does that mean that essentially the contract doesn't exist anymore and now Yahoo gets damages for coverage they never paid for and it was never anticipated? Exactly. I mean, if Yahoo's position is National Union's brief repudiation of the contract, then there's no contractual basis to transfer any liability onto National Union because National Union's responsibility would be defined by the risk transfer nature of the agreement. You know, it's not like National Union lawsuits could be filed. National Union's liability is limited by the risk transfer provided by the contract. If that contract is out the window, if it's been repudiated, if that's Yahoo's position, then I think it's clear National Union owes, you know, no responsibility to Yahoo under the contract because there's no basis left to transfer the liability. But National Union could have significant liability in tort in that case. Correct. Yes. And, you know, of course, this exact claim went to the jury on the tort theory, and the jury rejected it. And I think that that shows the lack of causation about these defense costs because they were never transferred onto National Union. No, I only... I know. Let me get one question, then we'll let you go on because I know you have some other issues. And I think we've kind of taken ourselves out of the time constraint. So, we asked Yahoo's counsel about certification. Do you agree that, given sort of the uniqueness of this contract provision and the lack of case law that kind of guides us in this area, that certification might be something we should consider? No, I don't think certification is necessary here, and I don't think it would be appropriate. I don't think it would meet the criteria for review because Kennedy is not on point because it's about duty, not how you measure damages from breach of the policy like this one. Whatever the parameters of that other policy were, the opinion isn't clear. And the basic rules of how you measure contract damages are a matter of black letter California law that this court, I think, can easily apply without prolonging this litigation further and sending it to the California Supreme Court that doesn't need to resolve the issue of this very unusual type of policy. I think just applying the basic rules of contract damages showed that the district court's order was the only logical way to make Yahoo whole without giving it a windfall, and that's ultimately what the California law of contract damages attempts to do. And so I think this court should have no difficulty affirming just based on the very basic contract rules that we cited in our briefing. So I would be happy to answer further questions on the deductible coverage endorsement but I think the court understands our position that it just would be a windfall measure of damages that's not appropriate given Yahoo's very deliberate decision to structure its policy this way. And that the court shouldn't restructure the deal to grant Yahoo coverage if it refused and deliberately chose not to pay for. With the few minutes I have left I would like to turn to our process on the issue of grant fees which I think is also pretty straightforward. There's no dispute that in the very infection of state both contractual and extra-contractual claims were at issue. And under the California Supreme Court's decision and grant and subsequent cases to seem and so forth, an insurer who wants to recover grant fees has an obligation to allocate those fees between those grant permits to be recovered and those grants does not permit to be recovered and Yahoo did not offer that type of evidence. And the consequence of that failure of proof is judgment for National Union on that claim. Can I ask you a question? Yes. Well, before you get into a lot of Teleflex Medical Incorporated this is 851 F3rd 976 2017 decision by the 9th Circuit specifically it says National Union's argument that the District Court was required to deny all unsegregated fees speaking of grant fees is plainly contrary to California law providing for a portion of grant fees. Can you help me distinguish that case from this? Because that would seem to suggest that your argument goes a bit too far on why grant fees should just be outright denied. Well, grant fees you know the point is it's not with Yahoo's burden to present the evidence that would permit a segregation and if it is presented that sort of evidence No, I disagree with you. Hold on, back up. I don't think it was it was their responsibility to submit evidence that supported grant fees. They did that. Now the debate here is well you put in too much. But the cases that you're relying on are where no evidence was submitted. And it seems to me Telefax is the one that says hey where there's evidence in there that includes both segregated fees and unsegregated fees or coverable fees and uncoverable fees it's plainly contrary to California law which provides for an apportionment of grant fees. So I mean why wasn't it your duty to go in and argue about which fees shouldn't have been awarded? Because Yahoo had to present a competent witness that we could have examined on that question and it shows not to. Because we can't segregate fees we have no ability to do that because we didn't perform the work. And so in order to meet its prima facie burden Hold on a second. Wait, wait, wait, wait. I don't think that's a fair rendition of what happened here. They put forward a witness who could tell you what the fees were for. I don't think they had to put forward a witness who understood which were segregated and which were covered and which weren't. He could have explained you were able to ask any question about what these fees were about. And I don't mean to say you. I don't know if you were representing him below. But the insurance company's counsel was able to cross-examine him on anything about those fees. So they didn't make an argument to the jury as I understand it that some of these fees were not recoverable. Well, I think if you look at four excerpts of record 804, five excerpts of record 873-874, and five excerpts of record 875-876, it's clear that Tepstein, the witness they had, lacked foundation to answer those very basic questions. And if National Union's counsel had asked those questions, it essentially would have been waiving the lack of foundation, speculative, and hearsay objections that it would have raised to anyone who tried to offer it. Because Tepstein simply wasn't a competent witness to answer those questions without a good foundation. And we tried to argue it, and I should say also, you know, National Union has alternative arguments for a new trial. Because if there was a burden on National Union here, we tried to offer an expert, we tried to get that deposition in advance, and we tried to get a jury instruction that would have allowed us to make a more coherent argument to the jury about segregation. So, I'm interested in your jury instruction argument because it does appear that the district court gave the wrong jury instruction. And yes, the National Union requested a different jury instruction. What do we do if we believe that the jury instruction were improper? Your position is we should just use that improper jury instruction to strike out grant fees, or do we need to instruct the district court to take another look at this and redo, I don't know, the jury, I guess. It would be a remand for a limited retrial on the amount of grant fees with a properly instructed jury. You know, my primary argument is that under SWATO, which says that a sophisticated party, especially like Yahoo, is not entitled to a second try to present allocation evidence it should have presented the first time. But if the court rejects that and thinks that Yahoo had enough, the instructional error is an independent basis to reverse for a new trial because the jury was not instructed to do that sort of segregation that the court would say that we should have argued. We couldn't do that without the additional instructional language that made clear that Yahoo is not entitled to a hundred percent of what it claimed if the jury found that a portion of those fees should have been allocated to bad faith or to Yahoo's unsuccessful efforts to recover it under the deductible coverage endorsement. So that would be a limited new trial, either a jury trial or the parties, you know, can stipulate to a court trial although we did prefer to have a jury trial on this issue but that's something that would have to be decided on a remand as a result of the instructional error that resulted in what is on its face an excessive award of grant fees at a minimum. So does it matter whether it was the court that was deciding the grant fees or whether it was the jury? And part of it I ask because I know that Brand encourages the parties to have the court apply its expertise to decide the issue. It's not mandated and of course the parties have a right to take it to a jury but in Telflex, which neither of you cited, neither party cited that in this briefing, the court was making this determination and it found intertwined fees for both the bad faith and the insurance claim and awarded like 10%. It made the allocation. Here, if I understand the record, Yahoo put in over 100 pages, 114 something pages of billing and then argued, and I went and read the argument transcript, just argued flat out all of these fees are covered. And when you look at the billing clues, some of them say they're billing for bad faith. So there's no allocation, evidence presented, they say everything's covered and the jury is the one who's supposed to make this decision versus Telflex where the judge was doing that. Does that matter? Do you think there's any distinction there? Thank you, Your Honor. I have a couple of responses. So I don't think in terms of Yahoo meeting its burden of proof in this circumstance the tire effect matters because I believe Yahoo was responsible for presenting a competent witness who could do that allocation for the court. But for that, for the reason you mentioned, at least the court has some additional basis to evaluate the fees having presided over the case to look at the fees and figure out about how much of the case was really about litigating bad faith and unsuccessful coverage of these versus what it awarded. So in Telflex it might have been the district court was in a better position to actually make that determination. A lay jury is certainly not in that position. And so because the case has tried to the jury without a competent witness, you can't hand 100 pages of invoices to a jury and ask them to do an allocation based on what Grant requires. I get the sense that this was poorly pre-tried. That more discovery and more pointed discovery would have been better for both sides. We agree, but we didn't have the invoices until the eve of trial because Yahoo was standing on its privileged objection not to produce them. The district court determined  a Rule 26 violation and that Yahoo had to produce them to us on a rolling basis. Once we became informed by Yahoo that it was complete with its production, the district court determined to do a discovery deposition. We then sought to do a discovery deposition and Yahoo, again, did not offer counsel who prepared the invoices and offered Mr. Tepstein. You have the opportunity to seek relief from the district court. We did. You could have extended the trial. You could have expanded the record. You could have asked for more depositions. Your Honor, we did all of those things and the district court denied our request. We requested a deposition. I think at one point we requested a trial continuance and we filed multiple motions on speaking to either preclude the fees or cease. But you were late in doing that. The only reason we were late in doing that is because Yahoo had been standing on its privilege objection and as long as Yahoo wasn't going to produce the evidence to support its fee claim, we didn't need to do any discovery because the claim would have been precluded. How could it prove the claim without showing the evidence? It couldn't do that and our position was because we thought that's what Yahoo was going to do, there was going to be no claim and it wasn't until shortly before trial. That doesn't make sense, does it? If they're going to have a claim for damages because of fees, they've got to prove their fees. They can't just get the fees on a stay still. I agree, Your Honor and because Yahoo was refusing to disclose the evidence of its fees claiming privilege, we thought that they weren't going to be able to meet their burden of proof and it wasn't until the district court decided to order them to disclose the fees and put them for deposition that there was going to be any evidence to support that claim and that only happened shortly before. It was a flurry of last-minute activity that should have been done a lot earlier. Ms. Carter, is your argument    or that it just wasn't clear enough, it wasn't emphatic enough because the jury was not going to be able to do that and the jury was not going to be able to do that. The instruction said the cost of reasonable attorney fees and courtesy of pain policy benefits. It's just a correct statement of California law but it didn't go on to say but don't consider other things. It didn't include some more emphasis. Does that make it incorrect as a matter of California law or do you just think it could have been better, it could have been more clear? I believe that makes it incorrect as a matter of California law not because Brant specifies that the jury needs to be inspected on that critical limitation because as given, the instruction basically says if there's a but-for causal relationship between whatever fees they ask for and the bad faith, you can award whatever they requested and the jury needs to be instructed on that limitation to know that it can do some sort of segregation or some sort of limitation. And so because the instruction only reflected half of the Brant rule, I think it was erroneous as a matter of law. The district court seemed to recognize that it wasn't fully compliant with the recommended jury instructions but it did seem to couch it in discretion as to why and I forget the answer now, maybe you didn't feel like your requested jury instruction needed to be used. I mean, isn't there some discretion for the district court to tailor the recommended jury instructions and help me understand why this was a pure legal error because he deviated from the recommended jury instruction versus in the totality of circumstances it made sense in this case. The reason the district  didn't give a full instruction is because he thought that additional language would be confusing because Yahoo was asserting its claim for the $3.5 million in bad safety damages. I don't think that claim should have gone to the jury. We moved to rule 50 because it wasn't related to anything national union did. And so it decided to exercise its discretion to not give a full instruction based on what I think was an erroneous decision underlying the claims that were going to the jury. But regardless, I even offered alternative language to try to cure that confusion because the limitation is critical and without the limitation I think it's an error of law under Brandt because attorneys fees under Brandt are damages, they're economic damages that have to be proved with precision and the jury needs to understand the limitation otherwise it's just going to award whatever it sees on the invoices. And so I think Brandt requires that language and I think it was an error of law that the insurance company well within the right but took the unusual step to require this to go to the jury and now the complaint seems to be well the jury wasn't really capable of performing its function. So I mean there's a little bit of tension between the strategy that was done  insurance        bit of tension  the jury and the insurance company and the jury. So I think it's a little bit of tension between the jury and the  company. So I think it's a little bit of tension between the jury and the insurance company. So I think bit of tension between  jury and the insurance company. So I think it's a little bit of tension between the jury and the insurance company. I think it's a the insurance company. I  it's a little bit insurance   think it's a little  little bit of tension  the jury and the      company.   it's a little bit a little bit of  between the jury and
judges: Hellerstein, Nelson, Bade